**UNITED STATES DISTRICT COURT**   **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NOS. 1:03-CR-52 |
| | § | 1:03-CR-129 |
| ORENTHEL JAMES FRANCOIS | § | |

**MEMORANDUM AND ORDER**

Pending before the court are Defendant Orenthel James Francois's ("Francois") Motions for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018 (## 45 & 14). Francois contends that compassionate release is warranted in this case because he received an unusually long sentence (of which he has served more than 20 years) and subsequent changes in the law have produced unwarranted disparities among defendants with similar records who have been found guilty of similar conduct. He maintains that there is a gross disparity between the sentence he is serving and the sentence that would be imposed today for the same conduct. Francois also asserts that he has displayed "remarkable rehabilitation" and has taken continuous strides to prepare himself for reentry back into society to be a law abiding citizen.

The Government filed responses in opposition (## 46 & 19). After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motions. Having considered the motions, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motions should be denied.

I.   Background

On March 19, 2003, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a seven-count Indictment in Case No. 1:03-CR-52 against Francois, charging

him in Count 1 with Kidnaping, in violation of 18 U.S.C. § 1201, in Count 2 with Brandishing a Firearm in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c), in Count 3 with Carjacking, in violation of 18 U.S.C. § 2119, in Count 4 with Brandishing a Firearm in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c), in Count 5 with Transporting a Stolen Firearm in Interstate Commerce, in violation of 18 U.S.C. § 922(i), in Count 6 with Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1), and in Count 7 with Transporting a Stolen Vehicle in Interstate Commerce, in violation of 18 U.S.C. § 2312.  On March 27, 2003, a federal grand jury in the Western District of Louisiana, Alexandria Division, returned a seven-count Indictment against Francois, charging him in Count 1 with Kidnaping, in violation of 18 U.S.C. § 1201, in Count 2 with Carjacking, in violation of 18 U.S.C. § 2119, in Count 3 with Brandishing a Firearm in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i) & (ii), in Count 4 with Transportation of  a Stolen Firearm, in violation of 18 U.S.C. §§ 922(i) & 924(a)(1)(D)(2), in Count 5 with Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(1)(D)(2), in Count 6 with Possession of a Firearm by a Fugitive, in violation of 18 U.S.C. §§ 922(g)(2) & 924(a)(1)(D)(2), and in Count 7 with Transportation of a Stolen Motor Vehicle, in violation of 18 U.S.C. § 2312.  On June 11, 2003, the Louisiana case was transferred to the Eastern District of Texas, Beaumont Division, and restyled as Case No. 1:03-CR-129.

On June 16, 2003, Francois pleaded guilty before the late United States District Judge Howell Cobb to Counts 1, 3, 4, 5, 6, and 7 of the Indictment in Case No. 1:03-CR-52 and to Counts 1 through 7 of the Indictment in Case No. 1:03-CR-129.  Count 2 of the Indictment in Case No. 1:03-CR-52 was subsequently dismissed on the motion of the United States.

2

On December 10, 2003, Judge Cobb sentenced Francois to 235 months' imprisonment in Case No. 1:03-CR-52. This term consists of terms of 151 months as to Counts 1 and 3 of the Indictment, 84 months as to Count 4 of the Indictment, and 120 months as to counts 5, 6, and 7 of the Indictment. Counts 1, 3, 5, 6, and 7 are to be served concurrently with each other and with his term of imprisonment in Case No. 1:03-CR-129. Count 4 is to be served consecutively to the other counts and to all counts of imprisonment in Case No. 1:03-CR-129. On December 10, 2003, Judge Cobb sentenced Francois to 451 months' imprisonment in Case No. 1:03-CR-129. This term consists of terms of 151 months as to Counts 1 and 2 of the Indictment, 300 months as to Count 3 of the Indictment, and 120 months as to Counts 4, 5, 6, and 7 of the Indictment. Counts 1, 2, 4, 5, 6, and 7 are to be served concurrently with each other and to his term of imprisonment in Case No. 1:03-CR-52. Count 3 of the Indictment is to be served consecutively to the other counts and to all counts of imprisonment in Case No. 1:03CR-52. This results in a total term of imprisonment for Francois in Case Nos. 1:03-CR-52 and 1:03-CR-129 of 535 months.

Judge Cobb also imposed a term of 5 years of supervised release in Case No. 1:03-CR-52, which consists of terms of 5 years as to Counts 1 and 4 and 3 years as to Counts 3, 5, 6, and 7 of the Indictment, all such terms to run concurrently with each other and with the terms of supervised release imposed in Case No. 1:03-CR-129. Judge Cobb likewise imposed a term of 5 years of supervised release in Case No. 1:03-CR-129, which consists of terms of 5 years as to Counts 1 and 3 and 3 years as to Counts 2, 4, 5, 6, and 7 of the Indictment, all such terms to run concurrently with each other and with the terms of supervised release imposed in Case No. 1:03-CR-52.

Francois is currently housed at Federal Correctional Institution Oakdale I ("FCI Oakdale I"), located in Oakdale, Louisiana, with a projected release date of May 28, 2041.

II.    Analysis

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c). Often referred to as "compassionate release," § 3582(c)(1)(A) embodies a rare exception to a conviction's finality. This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment. The First Step Act of 2018 ("Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)[1] to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other grounds by United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf. *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13. Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." *Id*. § 1B1.13(b). These categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id*. § 1B1.13(b)(1)-(6). The Fifth Circuit has clarified, however, that "prisoners have extraordinary and compelling reasons for relief 'only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner.'" *Austin*, 125 F.4th at 692 (quoting *Escajeda*, 58 F.4th at 186).

As a result, in the Fifth Circuit, a prisoner seeking compassionate release on his own motion must satisfy the following hurdles. The defendant must have exhausted his administrative remedies; "extraordinary and compelling reasons" must justify the reduction of his sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii); the reduction must be consistent with the Commission's applicable policy statements and not be based on non-retroactive changes to the law; and the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors. *See Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

6

A.    <u>Exhaustion of Administrative Remedies</u>

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional, but that it *is* mandatory").  Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule."  *Franco*, 973 F.3d at 468.  "Mandatory but nonjurisdictional procedural filing requirements may be waived."  *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022).  Therefore, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived.  *Id*.

7

In this instance, Francois claims to have filed a request for compassionate release with the Warden of FCI Beckley, where he was previously housed, but did not receive a response. He asserts that because 30 days have lapsed from the receipt of the request and the BOP did not file a motion on his behalf, "exhaustion of administrative remedies is not an issue in this case." Francois, however, presents no evidence to support his claim of exhaustion. The Government points out that the BOP could not find any record of Francois's having exhausted his administrative remedies and the Government could not confirm with FCI Beckley whether he had indeed sought relief from the warden. Thus, the Government could not ascertain whether Francois has satisfied the administrative exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A). In its report, Probation states that "records provided to the U.S. Probation Office regarding Mr. Francois's status at FCI Beckley indicate that no compassionate release or reduction in sentence request was submitted to the office of the Warden." Hence, contrary to Francois's assertion, exhaustion of administrative remedies is an issue in this case, and the court cannot conclude that Francois has complied with the requirement. Although Francois apparently failed to exhaust his administrative remedies before filing his motion for compassionate release, even if he had, his motion does not demonstrate that extraordinary and compelling reasons exist to reduce his sentence.

B.     Length of Sentence

Francois contends that he should be released because he received an unusually long sentence and that if he were sentenced today, he would receive a lesser sentence under current law, creating unwarranted sentencing disparities.

Section 1B1.13(b)(6) of the Sentencing Guidelines provides:

> UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).  A limitation on considering changes in the law is contained in 1B1.13(c) of the Sentencing Guidelines, which provides:

> LIMITATION ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

U.S.S.G. § 1B1.13(c).

A review of Francois's Presentence Investigation Report, prepared in November 2003, reveals that if sentenced today, he likely would receive a lesser sentence.  Francois would not be assessed the two criminal history points ("status points") imposed pursuant to U.S.S.G. § 4A1.1(d) based on his committing the offenses of conviction while serving terms of parole in Cause Numbers 61892 and 61893, in the 252nd District Court of Jefferson County, Texas. Amendment 821 of the Sentencing Guidelines, effective on November 1, 2023, which has been given retroactive effect, eliminated the imposition of status points for defendants with six or fewer criminal history points.  Francois had a subtotal criminal history score of 6.  The score was increased, however, to 7 as a result of his being assessed a criminal history point ("recency point") pursuant to U.S.S.G. § 4A1.1(e) for committing the offenses of conviction less than two

9

years following his release from custody on May 1, 2001, in Cause Nos. 61892 and 61893. Amendment 742 of the Sentencing Guidelines, effective on November 1, 2010, eliminated the imposition of recency points, and the extra point would not be assessed today. Hence, Francois's criminal history score would be a 6 if sentenced today, resulting in a criminal history category of III. Amendment 742 of the Sentencing Guidelines, which eliminated recency points, however, was not made retroactive. Although the application of Amendment 821 retroactively would lower Francois's criminal history score of 9 by two points to 7, his criminal history category remains at IV due to the non-retroactive effect of Amendment 742, as 7 to 9 criminal history points still establish a criminal history category of IV under the current guidelines.

In addition, if sentenced today, Francois would not be sentenced to 300 months' imprisonment for Brandishing a Firearm in Relation to a Crime of Violence as to Count 3 in Case No. 1:03-CR-129. At the time of sentencing, the applicable statute specified a sentence of not less than 25 years because it was a second or subsequent conviction for violating 18 U.S.C. § 924(c), the first being Francois's conviction of this same offense in Case No. 1:03-CR-52. The first conviction, however, was not final at the time of sentencing because he was sentenced for both offenses on the same day, December 10, 2003. Section 403(a) of the First Step Act, 132 Stat. at 5221-22, enacted on December 21, 2018, amended 18 U.S.C. § 924(c)(1)(C) to specify that the 25-year sentence applies only to a "violation of this subsection that occurs after a prior conviction under this subsection has become final." Therefore, today, Francois would likely receive a sentence of 84 months' imprisonment as to Count 3 in Case No. 1:03-CR-129, just as the court imposed for Brandishing a Firearm in Relation to a Crime of Violence as to Count 4 in Case No. 1:03-CR-52. The applicable statute, 18 U.S.C. § 924(c)(1)(A)(ii), now specifies a term of

imprisonment of not less than 7 years if the firearm is brandished. Congress, however, explicitly made the change to 18 U.S.C. § 924(c)(1) non-retroactive. The First Step Act provides:

> APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment.*

*Id.* § 403(b), 132 Stat. at 5222 (emphasis added). Nonetheless, Francois could not be assured that the Government's charging decisions would remain the same today. The evidence indicates, as set forth in the PSR, that Francois not merely brandished a firearm in Case No. 1:03-CR-52 but that he repeatedly discharged it when shooting at officers and then at passing motorists while fleeing from law enforcement near IH-10 in Texas on March 11, 2003. Under current law, the applicable statute, 18 U.S.C. § 924(c)(1)(A)(iii), specifies a term of imprisonment of not less than 10 years if the firearm is discharged.

Moreover, two of the applicable guidelines significantly increased in subsequent amendments to the Sentencing Guidelines. The base offense level on the kidnaping charges under U.S.S.G. § 2A4.1 went from 24 to 32. The victim adjustment applied under U.S.S.G. § 3A1.2 jumped from 3 to 6 points. Thus, Francois's total offense level would increase from 31 to 39. The applicable guideline range for an offense level of 39 with a criminal history category of III is now 324 to 405 months of imprisonment. The maximum statutory terms of imprisonment for the offenses of kidnaping and brandishing a firearm in relation to a crime of violence, however, remain life imprisonment, which would apply if the court chose to depart or vary upwardly from the guidelines.

In order to meet the requirements of the Unusually Long Sentences provision of U.S.S.G. § 1B1.13(b)(6), Francois must satisfy three requirements. First, the defendant must be serving

11

an unusually long sentence.  U.S.S.G. § 1B1.13(b)(6).  The sentence Francois received, 535 months, could be viewed as unusually long, but it was imposed after he launched an unusually egregious saga of violence and intimidation spanning three different states over the course of two days.  His criminal conduct involved two kidnapings at gunpoint, two carjackings at gunpoint, the theft of a firearm from the police, the discharge of multiple rounds from a firearm directed at law enforcement officers and motorists, two instances of brandishing a firearm in relation to a crime of violence, two occasions of transporting a stolen firearm, two occurrences of transporting stolen vehicles, two instances of the possession of a firearm by a convicted felon, the possession of a firearm by a fugitive, assaulting public servants, and the theft of a law enforcement vehicle, all in his efforts to evade capture by law enforcement.  Second, the defendant must have served at least ten years of that sentence.  *Id*.  Francois has fulfilled this requirement.  Third, there must have been a change in the law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed."  *Id*.  This section explicitly excludes the consideration of non-retroactive changes "to the Guidelines Manual."  *Id*.  While some of the sentence disparities in this case are based on non-retroactive changes to the Guidelines Manual, such as the amendment that eliminated recency points, others are not.  In the Fifth Circuit, however, controlling precedent precludes the court's consideration of non-retroactive changes in *any* law, which accounts for most of the disparities in this case.  *See Austin*, 125 F.4th at 692 ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."); *Escajeda*, 58 F.4th at 187 (holding that "a prisoner cannot use § 3582(c) to challenge the legality or the duration of his sentence").

In a 2023 decision, the Fifth Circuit rejected a defendant's argument that he should receive a sentence reduction because the First Step Act reduced the statutory minimums applicable to his offenses. *See United States v. McMaryion*, No. 21-50450, 2023 WL4118015, at *2 (5th Cir. June 22, 2023) (per curiam). The court pointed out that Congress did not make those reductions retroactive and went on to declare that "a prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion, because such changes are neither extraordinary nor compelling." *Id*. The court noted that "in federal sentencing the *ordinary* practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Id*. (quoting *Dorsey v. United States*, 567 U.S. 260, 280 (2012)). The court elaborated that this ordinary practice reflects a "presumption against retroactive legislation" that is "deeply rooted in our jurisprudence" and that "embodies a legal doctrine centuries older than our Republic." *Id*. (quoting *Landgraf v. USI Film Prods*. 511 U.S. 244, 265 (1994)). The *McMaryion* court held: "We may not usurp the legislative prerogative and use 18 U.S.C. § 3582(c)(1) to create retroactivity that Congress did not." *Id*.

On July 15, 2024, however, the Fifth Circuit took the opposite approach in *United States v. Jean* when it upheld the release of a defendant for whom the district court found compassionate release to be warranted because his sentence, if imposed at the time of review, would have been nearly a decade shorter and he had exhibited extraordinary rehabilitation. 108 F.4th at 277. The defendant's sentence would have been shorter because he no longer would have been classified as a career offender under U.S.S.G. § 4B1.1, which, among other things, would have affected his criminal history category. *Id*. at 279-80. Pointing to the Sentencing Commission's amendments to the Sentencing Guidelines that became effective on November 1, 2023, specifically U.S.S.G.

§ B1.13(b)(6), the court held that "after November 1, 2023, a non-retroactive change in the law may be considered in determining whether the defendant presents, as a whole, extraordinary and compelling reasons if: (1) the defendant has served at least ten years of the term of imprisonment; (2) the change in the law would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed; and (3) the defendant's individualized circumstances support compassionate release." *Jean*, 108 F.4th at 289-90. The *Jean* court explicitly held:

> It is within a district court's sound discretion to hold that non-retroactive changes in the law, in conjunction with other factors such as extraordinary rehabilitation, sufficiently support a motion for compassionate release. To be clear, it is also within a district court's sound discretion to hold, after fulsome review, that the same *do not* warrant compassionate release. For this court to hold otherwise would be to limit the discretion of the district courts, contrary to Supreme Court precedent and Congressional intent.

108 F.4th at 290.

In *Austin*, a different panel of the Fifth Circuit reached a contrary conclusion. In January 2023, the defendant filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1), arguing that a non-retroactive change in the law was an extraordinary and compelling reason to reduce his sentence. *Austin*, 125 F.4th at 690-91. At the time Austin pleaded guilty to conspiracy to distribute cocaine hydrochloride and cocaine base in violation of 21 U.S.C. § 846, and at the time of his sentencing in 2013, the mandatory minimum sentence for that offense was 20 years of imprisonment. *See* 21 U.S.C. § 841(b)(1)(A) (2010). The district court applied the mandatory minimum and sentenced Austin to 20 years of imprisonment. In 2018, Congress reduced the mandatory minimum sentence for that offense to 15 years of imprisonment. *See* First Step Act of 2018, Pub. L. No. 115-391, § 401(a)(2)(A), 132 Stat. 5194, 5220 (codified as amended at 21

U.S.C. § 841(b)(1)(A)).  Congress explicitly made this change non-retroactive, using identical language as that quoted above in reference to § 403(b) of the First Step Act, which made the change to the firearms statute at issue in this case, 18 U.S.C. § 924(c), non-retroactive.  *See id*. § 401(c), 132 Stat. at 5221.  Austin argued in his motion for compassionate release that despite Congress's decision to make § 401 non-retroactive, it should nonetheless apply retroactively to him.  *Austin*, 125 F.4th at 691.  He contended that the non-retroactive change set forth in § 401 was a "compelling and extraordinary" reason to reduce his sentence, because "if he were sentenced today, he would get the benefit of the First Step Act."  *Id*.

The Fifth Circuit rejected Austin's argument, holding that it was "squarely foreclosed under our rule of orderliness:  (A) we are bound by *United States v. Escajeda*, and (B) our later decision in *United States v. Jean* was wrong to say otherwise."  *Austin*, 125 F.4th at 691.  The court observed that Austin's case was "controlled by the binding holding in *United States v. Escajeda*."  *Id*.  Citing the definitions of "extraordinary" and "compelling" set forth in *Escajeda*, the *Austin* court concluded that prisoners have extraordinary and compelling reasons for relief "only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner."  *Id*. (quoting *Escajeda*, 58 F.4th at 186).  The court reasoned:

> A non-retroactive change in the law affects every prisoner previously sentenced under that provision in the exact same way.  And by its terms, a non-retroactive change in the law has zero effect on defendants already in prison.  Thus, a non-retroactive change in law is, by definition, neither an "extraordinarily severe exigency" nor "unique to the life of the prisoner."  *Ibid*.  Under a straightforward reading of *Escajeda*, a non-retroactive change in the law is not an extraordinary or compelling reason to reduce a prisoner's sentence.

*Id.* at 692. The panel noted that the Fifth Circuit had repeatedly followed *Escajeda* and reaffirmed this result. *See United States v. Cardenas*, No. 19-40425, 2024 WL 615542, at *2 (5th Cir. Feb. 14, 2024) (per curiam); *United States v. Elam*, No. 22-40373, 2023 WL 6518115, at *1-2 (5th Cir. Oct . 5, 2023) (per curiam); *McMaryion*, 2023 WL 4118015, at *2.

The *Austin* court recognized that § 1B1.13(b)(6) of the Sentencing Guidelines, the provision at issue here, says that a non-retroactive change in the law may be considered in determining whether the defendant presents an extraordinary and compelling reason for a sentence reduction. 125 F.4th at 692. The court, however, stated:

> But that changes nothing. Just like any agency action, the Guidelines "must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 757 . . . (1997); *accord Stinson v. United States*, 508 U.S. 36, 38, 44-45 . . . (1993). Thus, the Sentencing Commission cannot make retroactive what Congress made non-retroactive. *See, e.g., McMaryion*, 2023 WL 4118015, at *2. And it certainly cannot do so through an interpretation of "extraordinary and compelling" that conflicts with the plain meaning of those terms. *See ibid*. Moreover, the Commission "does not have the authority to amend the statute we construed" in *Escajeda* and its progeny. *Neal v. United States*, 516 U.S. 284, 290 . . . (1996); *accord United States v. Koons*, 850 F.3d 973, 979 (8th Cir. 2017).

*Id.* The *Austin* panel proceeded to declare that *Jean* "was wrongly decided and does not control. Under our rule of orderliness, when one panel decision disregards an earlier panel decision, we are duty-bound to follow the earlier one." *Id.* at 692-93 (citing *Lucas v. Lumpkin*, 125 F.4th 639, No. 24-40359 (5th Cir. 2025); *Nivelo Cardenas v. Garland*, 70 F.4th 232, 242 n.7 (5th Cir. 2023)). The *Austin* court further observed that *Jean* was distinguishable. *Id.* at 693. In *Jean*, the change in the law resulted from a new judicial interpretation of § 4B1.1 of the Sentencing Guidelines, whereas in *Austin*, the change in the law resulted from a new statute that explicitly said it was non-retroactive, the First Step Act § 401(c), 132 Stat. at 5211. *Id.* Similarly, in the case at bar, the change in the law at issue resulted from a new statute that explicitly stated it was non-

retroactive—First Step Act § 403(b), 132 Stat. at 5221-22.  In any event, the *Austin* decision makes clear that "[a] non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582."

Therefore, under controlling Fifth Circuit law, the length of Francois's sentence imposed in 2013 versus the length of the sentence he might receive today cannot be considered in determining whether compassionate release or a sentence reduction is warranted under 18 U.S.C. § 3582(c)(1)(A).

C.    Rehabilitation

Francois asserts that his "remarkable rehabilitation" post-sentence, evidenced by his purported lack of incident reports for the last six months, his continuing to follow the rules of the facility, his PATTERN score of low risk for recidivism, the courses he has taken, and the programs he has completed, establishes extraordinary and compelling reasons for his release.  He maintains that he "has matured from a young man pursuing a lawless lifestyle, to a reflective, empathetic mature responsible adult."  Francois contends that "there can be no genuine safety concerns on his release," "he has taken continuous strides to prepare himself for reentry back into society to be a law abiding citizen," and "his extraordinary rehabilitation shows that he is ready for re-entry."

A review of the BOP records Francois attached to his motion reflects that his efforts at rehabilitation, while commendable, fall far short of "remarkable."  The records show that Francois is 48 years old, is a Medical Care Level 2 inmate (stable, chronic care), recovered from COVID-19 in 2020, has no medical restrictions, has regular duty work assignments, and is cleared for food service.  He has completed a 40-hour drug education course, has taken several courses

pertaining to work activities such as housekeeping, cleaning chemicals, maintaining floors, and OSHA certification, and has completed a variety of classes related to personal interests and leisure activities, such as reading, personal finance, sports rules, softball officiating, and tournament management. In *United States v. Comb*, the court found a similar BOP log listing a defendant's participation in rehabilitative programs to be "wholly inadequate" for concluding that the defendant's rehabilitation was "beyond or out of the common order." No. H-13-0575-06, 2025 WL 240954, at *3 (S.D. Tex. Jan. 17, 2025) (quoting *Escajeda*, 58 F.4th at 186), *aff'd*, 2025 WL 603881 (5th Cir. Feb. 25, 2025). Francois also attained a GED while incarcerated in Texas state prison in 1994, well before his federal offenses of conviction. Francois's efforts at rehabilitation while in state prison, however, did not prevent him from committing the variety of offenses at issue in the case at bar, just as Comb's rehabilitation efforts while imprisoned previously for bank robbery did not preclude him from committing another bank robbery for which he was imprisoned when he sought compassionate release. *Id*. at n.7. Francois's BOP records further show that Francois has detainers lodged against him by the State of Texas for attempted capital murder, aggravated assault, deadly conduct, and parole revocation. He also has five charges pending against him in Chambers County, Texas.

Of primary importance, however, is the fact that Francois was recently sanctioned on February 25, 2025, for possessing a hazardous tool in the BOP on February 19, 2025. BOP staff recovered a cell phone connected to a tablet in his assigned cell that day, a violation that he admitted to committing. As a result, Francois lost good conduct time credit as well as certain privileges, was placed in disciplinary segregation, and was assessed a fine of $150 to deter future prohibited acts. Hence, Francois's assertion in his motion that he "did not have any incident

reports in the last 6 months and continues to follow the rules of the facility" is no longer accurate. Hence, contrary to his contention that "there can be no genuine safety concerns on his release," safety concerns remain paramount.

In any event, the amended policy statement recognizes: "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d); *accord United States v. Martinez*, No. 23-50418, 2024 WL 658952, at *1 (5th Cir. Feb. 16, 2024) ("Even if [the defendant] were reformed, his rehabilitation efforts alone are not an extraordinary and compelling reason for release."); *United States v. Handlon*, No. 23-50386, 2024 WL 111787, at *1 (5th Cir. Jan. 10, 2024) (holding that the defendant's "rehabilitation efforts alone are not an extraordinary and compelling reason for his release"). In fact, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected." *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)). Further, "making good use of one's time in prison and regretting one's actions are not grounds for sentence reductions under the First Step Act." *United States v. Polnitz*, No. 17-cr-201-pp, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020). Nonetheless, the amendments to the Sentencing Guidelines added a proviso that states: "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d). In this instance, however, Francois cannot be considered rehabilitated in view of his recent disciplinary violation, and there are no other circumstances which are cognizable by the court that suggest a reduction

in sentence is warranted. While the court hopes that Francois will continue on the path to rehabilitation, the court is of the opinion that neither the length of his sentence nor his rehabilitation efforts merit his release at this time.

      D.     Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chavez*, No. 23-50684, 2024 WL 940263, at *1 (5th Cir. Mar. 5, 2024); *Rollins*, 53 F.4th at 358-59; *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *Shkambi*, 993 F.3d at 392; *United States v. Thompson*, 984 F.3d 431, 435 n.11 (5th Cir. 2021) (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). Francois's offenses of conviction stem from a series of serious felony offenses he committed over the course of two days in three different states.

On March 11, 2003, at approximately 1:00 a.m., a Texas state trooper, Jack Crawford ("Crawford"), conducted a traffic stop on a vehicle traveling on IH-10 in Chambers County with no license plate on the rear bumper. As he approached the vehicle, he detected a strong odor of burnt marijuana. The defendant was identified as the front passenger of the vehicle after initially giving a false name. All three occupants of the vehicle gave conflicting stories regarding where they had been and the reason for their travel, and Crawford requested assistance from the Chambers County Sheriff's Office. Deputies Pepper Sterner ("Sterner") and Charles Alexander,

Jr. ("Alexander"), responded to the scene.  A search of the vehicle revealed a clear plastic bag containing approximately 119 grams of cocaine in the glove compartment.  Crawford immediately drew his service weapon and ordered the three subjects to the ground.  As Sterner began to secure Francois, he resisted and overpowered the deputy.  As Sterner and the defendant struggled, Sterner yelled, "He's going for my gun!"  After Crawford's efforts to assist Sterner failed, Francois was able to pull Sterner's weapon from his holster and fled on foot.  Alexander ran after Francois while Crawford and Sterner secured the other two subjects. While being chased by Alexander, Francois fired several shots in his direction.  Alexander returned fire, ultimately firing all of his rounds of ammunition to no avail.  Francois then fled on foot onto IH-10 where he attempted to flag down several motorists and fired additional shots, hitting at least one vehicle in an attempt to get a motorist to stop.  The officers subsequently lost sight of Francois as he fled into a nearby marsh.

At approximately 6:57 a.m., officers from a variety of law enforcement agencies were searching for Francois.  A Chambers County deputy was dispatched to a wrecker service in Stowell, Texas, where the owner reported that someone had entered his business office by crawling through a window, looked through various items, stole $26, and used a cordless telephone to make a long distance call.  The evidence indicated that Francois, while evading police, had been inside the building and attempted to call his mother.  Several hours later, the Jefferson County Sheriff's Office received a call from Terry Edgerly, who became concerned because her husband, Brian Edgerly ("Edgerly"), who usually left for work about 6:30 a.m., had left a coffee cup on the counter and his work boots were still in the kitchen.  His employer reported that Edgerly had not shown up for work or called to explain his absence.  Approximately

21

two hours later, Edgerly called his wife from Many, Lousisiana, and informed her that Francois had entered their home earlier that morning and demanded the keys to their vehicle. Edgerly stated that Francois had then forced him at gunpoint to go with him. A sheriff's deputy, who was still at the Edgerly residence, directed Edgerly to contact the nearest law enforcement agency. The Jefferson County Sheriff's Office subsequently sent an airplane to pick up Edgerly and return him to Texas.

Edgerly provided a written statement regarding the events of the morning. He stated that at approximately 5:50 a.m., while he was in his kitchen, Francois entered his residence through the garage entry door and pointed a chrome semi-automatic pistol at him. Francois asked for the keys to Edgerly's Chevrolet TrailBlazer, which he supplied. Francois then directed Edgerly to go outside and enter the passenger seat of the vehicle. Francois got in the driver's seat and instructed Edgerly to direct him north on the back roads, avoiding IH-10. Francois drove north until they ended up on U.S. Hwy. 190, traveling west to Livingston, Texas. Francois stopped at a gas station and directed Edgerly to fill up the car, stating that he would be shot if he tried to run. Francois drove north to Lufkin, Texas, and then traveled east toward Louisiana. Approximately six miles into Louisiana, Francois released Edgerly in an area with no houses. He walked to the nearest residence where he contacted his wife and the Sheriff's Office in Many, Louisiana. Edgerly's vehicle was later found abandoned.

On the evening of March 11, 2003, Francois contacted his girlfriend, Teressa Roshawn Mayfield ("Mayfield"), at her cousin's residence in Mansura, Louisiana. Mayfield advised authorities that Francois entered her vehicle and she attempted to get him to turn himself in to the police. Mayfield related that Francois appeared to be in a trance and accused her of working with

the FBI. Francois directed Mayfield to drive north, stating that if she attempted to signal the police, he would kill himself. Mayfield advised that she later let Francois out near a road sign that read, "Shreveport 108 miles."

No additional information was relayed to authorities until approximately 1:00 p.m. on March 12, 2003. Eddie L. Fitzpatrick ("Fitzpatrick") located a police officer in Little Rock, Arkansas, and reported he had dropped off Francois approximately 15 minutes earlier near IH-30 after being kidnaped earlier that morning. Fitzpatrick provided a statement to the FBI which reflected that at approximately 6:30 a.m. that morning he stopped at a convenience store in Alexandria, Louisiana, on his way to work. After exiting the store, Francois approached him and requested a ride to the freeway. Fitzpatrick agreed to give him a ride, but after entering Fitzpatrick's vehicle, a Lincoln Town Car, Francois pointed a pistol at him and told him to drive to Shreveport, Louisiana. When stopping for gasoline, Fitzpatrick left the keys in the vehicle hoping that Francois would drive off, but he did not. Fitzpatrick subsequently reentered the vehicle and then headed toward Texarkana, Arkansas. After avoiding detection by a Louisiana State Police patrol unit, Francois directed Fitzpatrick to another highway that led to Lewisville, Arkansas. Francois told Fitzpatrick that he would let him go once they crossed the state line. After entering Arkansas, however, Francois stated that he had a better chance in a big city and directed Fitzpatrick to drive to Little Rock. Sometime during the ride, Francois stole $100 from Fitzpatrick. Upon arriving in Little Rock, Fitzpatrick exited IH-30 and drove approximately three blocks where Francois got out of the vehicle near some boarded-up houses and a church. Fitzpatrick then drove around Little Rock until he located a police officer and filed a complaint.

Upon the filing of the complaint, information regarding Francois was broadcast to all police units in Little Rock.  At approximately 4:49 p.m., Francois was located in the general area where Fitzpatrick had dropped him off.  As law enforcement authorities approached him, Francois charged one of the officers and a physical confrontation arose in which Francois attempted to steal the officer's gun.  During the confrontation, officers sprayed Francois with pepper spray, but he was able to enter an idling police car and drive off.  He was seen weaving in and out of traffic and running a red light.  A chase ensued in which Francois was observed throwing several items out of the police car in an apparent attempt to locate a weapon.  Subsequently, while traveling about 90 miles per hour on IH-30, Francois lost control of the vehicle and crossed a median into incoming traffic.  The vehicle slammed into some trees, and debris from the impact struck a passing motorist who had to swerve to avoid a collision.  After a brief struggle, Francois was finally taken into custody.  Looking at the totality of the circumstances, it is apparent that Francois's actions placed numerous people in significant danger of losing their lives or sustaining serious bodily injuries in his efforts to avoid returning to prison.  He evinced no regard for the lives or well-being of the persons he affected during his attempt to evade apprehension.

In addition to the nature and circumstances of his offenses of conviction, Francois's lengthy criminal history similarly demonstrates that he poses a danger to the community.  His criminal history begins at age 14 and includes prior convictions for unauthorized use of a motor vehicle (2x), burglary of a vehicle, possession of a controlled substance, aggravated robbery, and delivery of a controlled substance.  He failed to comply with previous terms of probation, and he was on parole for two separate offenses at the time he committed the instant offenses of conviction.  Francois's PSR also lists pending charges from the State of Texas for attempted capital

murder/aggravated assault (2x), deadly conduct, possession of a controlled substance with intent to deliver, aggravated robbery, burglary of a habitation, and aggravated kidnaping, as well as pending charges from the State of Arkansas for theft of property, aggravated assault, and fleeing. Like the prisoner in *United States v. Jones*, Francois is "the quintessential career offender." 852 F. App'x 60, 61 (3d Cir. 2021).

In *United States v. Boyd*, the defendant had a similar history of violating probation, including committing the offense of conviction while on probation. No. 3:17-CR-37-TAV-DCP-4, 2021 WL 5094903, at *3 (E.D. Tenn. Nov. 2, 2021). The court found that "defendant's history of violating probation calls into question his respect for the law and whether he would abide by his conditions of supervised release in this case if his motion for compassionate release were granted." *Id*. This court shares the same concerns with regard to Francois. Francois also has a history of poly-substance abuse beginning at age 12, which includes the daily use of alcohol, marijuana, and cocaine, and the frequent use of codeine and the inhalation of paint. In short, Francois's "criminal history and conduct reflect an unabated propensity for crime." *United States v. Padilla*, No. H-14-174-1, 2021 WL 1517855, at *5 (S.D. Tex. Apr. 16, 2021).

In addition, granting Francois compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence. 948 F.3d at 694. The district court determined that the defendant's terminal illness "constitute[d] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime

25

and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id.* at 694; *see Rollins*, 53 F.4th at 359-60; *Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"); *accord United States v. Rodriguez*, 27 F.4th 1097, 1100 (5th Cir. 2022). Here, Francois has served just over half of his sentence and presents no significant health concerns. Releasing him now or reducing his sentence would similarly minimize the impact of his crimes and the seriousness of his offenses as well as fall short of providing just punishment and adequate deterrence to criminal conduct. On balance, in view of the circumstances discussed above, the court declines to exercise its discretionary authority to reduce Francois's sentence under § 3582(c)(1)(A) in light of the applicable factors set forth in § 3553(a).

III.    Conclusion

In sum, Francois has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he has behaved when released in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Francois's track record is abysmal. There is no reason to believe that he would not revert to his prior drug-dealing and drug-abusing behavior, his commission of multiple acts of violence, and his engaging in other

criminal activity if released from prison at this juncture. *See United States v. Wymer*, 573 F. Supp. 3d 1208, 1212 (N.D. Ohio 2021). The 535-month sentence of imprisonment imposed upon Francois for his kidnaping, carjacking, firearms, and transportation of stolen property offenses comports with the 18 U.S.C. § 3553(a) factors, and he has adduced no extraordinary and compelling reasons to lessen his sentence or release him from prison at this juncture. Neither the length of his incarceration, certain non-retroactive changes in the law, nor his efforts at rehabilitation merit a reduction of his sentence under these circumstances.

Accordingly, Francois's Motions for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018 (## 45 & 14) are DENIED.

SIGNED at Beaumont, Texas, this 4th day of April, 2025.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE